UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------  X
                                                              :
PATRICK CAPITAL MARKETS, LLC,                                 :
                                                              :     ORDER AND OPINION
                                              Plaintiff,      :     GRANTING MOTION TO
                -against-                                     :     DISMISS THE COMPLAINT
                                                              :
ASCEND REAL ESTATE PARTNERS, L.P.,                            :     21 Civ. 6004 (AKH)
RABINA PROPERTIES, LLC, MAIDAD                                :
(MICKEY) RABINA, JOSHUA RABINA, and                           :
JARDAN 520, LLC,                                              :
                                                              :
                                              Defendants.     :
                                                              :
------------------------------------------------------------  X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Patrick Capital Markets, LLC ("Plaintiff") sues Defendants Ascend Real Estate Partners L.P. ("Ascend"); Rabina Properties LLC ("Rabina"), Maidad (Mickey) Rabina ("Mickey Rabina"), and Joshua Rabina ("Josh Rabina"), (collectively, the "Rabina Defendants"); and Jardan 520 LLC ("Jardan"), (collectively, "Defendants") to recover fees allegedly owed it under a Placement Agent Agreement between Plaintiff and Ascend. Amended Complaint ("FAC"), ECF No. 25. Plaintiff brings claims for (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) unjust enrichment; and (iv) quantum meruit against all Defendants; and (v) tortious interference with contract against the Rabina Defendants.

        Defendants move to dismiss the complaint against all parties for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or at minimum to sever and transfer the claims against Ascend pursuant to 28 U.S.C. § 1404(a). (ECF No. 28). For reasons provided below, the motion to dismiss is granted.

1

## BACKGROUND

The following facts are taken from the FAC, which I must "accept[] as true" for the purpose of deciding this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At its heart, this case involves a simple contractual dispute, rendered more complicated by the number of parties and entities. Accordingly, I first provide an overview of the Defendants and the Agreement and then summarize the relevant facts giving rise to the instant dispute.

### *The Parties*

**Plaintiff Patrick Capital Markets, LLC.** Plaintiff is a Missouri limited liability company and privately held independent broker dealer that acts as a third-party marketing and sales firm, which offers wholesale distribution of select investment products and services. FAC ¶ 2. All of Plaintiff's LLC members are citizens of Missouri. *Id.* Kevin Gallagher ("Gallagher") was a registered representative of Plaintiff. *Id.*

**Defendant Ascend Real Estate Partners L.P.** Ascend is a Delaware limited partnership with a principal place of business at c/o Rabina Properties, LLC, 505 Fifth Avenue, 27th Floor, New York, NY 10017. *Id.* ¶ 3. Ascend was a joint venture between Rabina and Versant Investment Management, LLC, but this joint venture relationship terminated sometime in early 2019. *Id.* ¶¶ 12–13. At the start of 2020, Ascend began marketing its advisory business as Fleet Real Estate Partners. *Id.* ¶ 4.

**Defendant Rabina Properties LLC.** Defendant Rabina is a New York limited liability company with a principal place of business at 505 Fifth Avenue, 27th Floor, New York, NY 10017, the members of which are Defendants Maidad Rabina and Joshua Rabina. *Id.* ¶ 5. Rabina, directly and indirectly, controls all decisions with respect to the operations of Ascend

and is the sponsor of the securities offerings made by Ascend and Ascend d/b/a Fleet Real Estate Partners. *Id.* ¶ 6.

**Defendant Mickey Rabina.** Mickey Rabina is a resident and citizen of New York. *Id.* ¶ 7.

**Defendant Josh Rabina.** Josh Rabina is a resident and citizen of New York. *Id.* ¶ 8.

**Defendant Jardan 520 LLC.** Jardan is a Delaware limited liability company and a citizen of the states of Delaware and New York; its members are Riva Capital Partners V, L.P., a Delaware limited partnership, and RP Jardan 520 Member LLC, a Delaware limited liability company. *Id.* ¶ 9. Riva Capital Partners V was a special purpose entity owned, controlled, and funded by Abrams Capital, and Jardan was a special purpose entity owned, controlled, and funded by Ascend/Rabina or its affiliates to acquire property at 520 5th Avenue. *Id.* ¶ 41.

*The Agreement*

On August 23, 2018, Plaintiff entered into a Placement Agent Agreement (the "Agreement") with Ascend. *Id.* ¶ 12. Joseph McDonnell ("McDonnell")—Managing Director of Ascend and Senior Vice President of Rabina Properties—signed the Agreement on behalf of Ascend in his capacity as Managing Director and the Co-Chief Investment Officer of Ascend. FAC ¶ 12, 15. McDonnell also was the designated recipient for all notices or other formal communications, which if emailed, were to go to jmcdonnell@rabinaproperties.com. *Id.* ¶ 15.

The Agreement obligated the parties as follows. Plaintiff agreed to assist Ascend in developing a marketing program for the offer and sale or equity interests in Ascend and Ascend investment vehicles and to identify and introduce potential investors, and Ascend agreed to pay Plaintiff 1.5 percent of the amount of any investment made by an investor that Plaintiff

3

introduced. *Id.* The Agreement had limited scope, however. Plaintiff only was obligated to, and entitled to compensation for, developing marketing programs for certain prospective investors, identified in an attached Schedule ("Schedule 2"), and introducing prospective investors for certain specified investment vehicles ("Eligible Funds"), also set forth in a separate Schedule ("Schedule 1"). *Id.* Exhibit 1, at 1–2. Finally, as relevant here, the Agreement contained the following three clauses.

> **Section 11 Governing Law**. This Agreement and all claims arising out of or relating to it and the relationships created hereby, shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, U.S.A. applicable to contracts made and to be performed wholly within such state. The parties agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of any of them with respect to any matter whatsoever relating to or arising out of any actual or proposed transaction contemplated hereby or the engagement of or performance by [Plaintiff] hereunder. Ex. 1, at 11.
>
> **Section 12. Jurisdiction**. Each of [Plaintiff] and [Ascend] irrevocably and unconditionally submit to the exclusive jurisdiction of any state or Federal court sitting in the State of Delaware, U.S.A. over any suit, action or proceeding arising out of relating to this Agreement, including the exhibits hereto, and the relationships created hereby. . . . Each of [Plaintiff] and [Ascend] irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum or should be transferred. *Id.*
>
> **Section 15. Entire Agreement; Assignment Counterparts Amendments**. This Agreement contains the entire agreement between [Plaintiff] and [Ascend] and supersedes all prior understandings, whether written or oral. This Agreement shall be binding upon and inure to the benefit of [Ascend], [Plaintiff] . . . and their respective successors and permitted assigns. No party may assign or otherwise transfers any of its rights and obligations under this Agreement without the prior written consent of the other parties, and any purported assignment or other transfer or any such rights and obligations without such consent shall be null and void. . . . This Agreement (including any exhibit hereto) may not be amended except in writing signed by all parties hereto. *Id.* at 12.

The Agreement further provided a procedure for modifying Schedule 2, to add new prospective investors, which at the time the parties entered the Agreement, required the signoff of three individuals, one of whom was McDonnell. *Id.* ¶ 15; Ex. 1, § 1(b)(i).

4

*The Instant Dispute*

After signing the Agreement, Plaintiff introduced Ascend/Rabina to prospective investors who were not listed on Schedule 2 and in connection with investment vehicles not listed on Schedule 1.  FAC ¶¶ 17, 19, 20.  For example, Gallagher introduced his long-standing client, Portfolio Advisors, in October 2018 regarding an investment commonly referred to as 393 West End Avenue.  *Id.* ¶ 17.  Portfolio Advisors ultimately invested $15 million in the 393 West End Avenue transaction in October 2018, and Plaintiff was paid $150,000 in March 2019 by the Ascend entity that acquired the 393 West End property for introducing Portfolio Advisors to Ascend/Rabina Properties.  *Id.* ¶¶ 18–19.

By early March 2019, the Ascend partnership between Rabina and Versant LLC had ended.  *Id.* ¶ 16.  Notwithstanding the dissolution, Plaintiff continued to introduce Ascend/Rabina to prospective investors, not listed on Schedule 2, in connection with an investment being pursued by Ascend/Rabina in 520 Fifth Avenue; each of the introductions was pre-cleared with Ascend/Rabina and one or more of its principals, as documented in email correspondence among Gallagher, one or more of the principals of Rabina, and Jaclyn Fritzky ("Fritzky"), executive assistant to Rabina's principals.  *Id.* ¶ 21.  In response to the numerous introductions, McDonnell emailed Gallagher on May 7, 2019, copying Fritzky and under the subject line "520 capital raise," requesting that Gallagher send a list of names to Fritzky, and stating "Putting together internal list so we can make sure we're responsive."  *Id.* ¶ 21; *id.* Ex. B, ECF No. 25-2.  On May 9, 2019, McDonnell's associate sent offering materials to Gallagher via a Rabina Properties email address, and copying McDonnell at his Rabina Properties address; the email read: "Please find the 520 Fifth Avenue Overview attached for distribution to potential investors."  *Id.* ¶ 22.

On January 15, 2019, Gallagher hosted a dinner to introduce McDonnell to Anthony Carpenito ("Carpenito"), a senior executive from Abrams Capital responsible for sourcing and managing real estate investments by Abrams Capital. *Id.* ¶ 26–27. The introduction was not directed at any specific investment vehicle, but McDonnell and Carpenito planned to stay in touch, and Carpenito expressed interest in receiving information with respect to transactions that Rabina was pursuing. *Id.* ¶ 28. Immediately prior to the dinner, Gallagher was in the Rabina offices and mentioned the dinner to Mickey Rabina. *Id.* ¶ 29. Mickey Rabina remembered going on safari with Abrams Capital's founders and agreed that Gallagher should pursue the contact. *Id.*

Between the time of the January 2019 dinner and March/April 2019, McDonnell and Carpenito explored two other prospective investments, neither of which were consummated. *Id.* ¶ 32. On March 14, 2019, Gallagher attended a meeting at Rabina's offices and made a presentation of the 520 Fifth Avenue investment, during which prospective investors were identified and discussed, including Abrams Capital. *Id.* ¶ 33. On March 15, 2019, Gallagher's colleague notified Carpenito of the 520 Fifth Avenue Transaction at the request and direction of McDonnell. Two business days later, at Gallagher's request, McDonnell sent offering materials for the 520 Fifth Avenue Transaction to Carpenito. *Id.* ¶ 35. McDonnell contemporaneously emailed Gallagher and his colleague, from a Rabina email account, stating that McDonnell "Just sent Anthony [Carpenito] a note on 520 5th. Not going around you and wanted you to know and obviously we will figure things out if he has interest." *Id.* ¶ 36.

Ultimately, through Riva Capital Partners V, Abrams Capital invested $72 million in Jardan, which enabled Ascend/Rabina to consummate the Transaction on July 1, 2019. *Id.* ¶ 41 (noting that the $72 million investment was nearly two-thirds of the necessary equity capital).

Based upon the foregoing, Plaintiff alleges that "[b]y October 2018 and in all events no later than March 2019, the parties had amended the Placement Agreement and changed, as demonstrated by their course of conduct, including verbal communications, the 520 Capital Raise Email, the 520 Confirmation Email, and other emails, and other actions, to include Rabina Properties and the procedure for adding Investors covered by the Placement Agreement." *Id.* ¶ 25. Accordingly, Plaintiff claims that it is entitled to recover a fee for its services under the Placement Agreement; Defendants have failed and refused to pay. *Id.* ¶ 41.

Plaintiff now sues all Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and quantum meruit. In addition, it sues the Rabina Defendants for tortious interference with contract. Defendants move to dismiss the complaint against all parties for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or at minimum, to sever and transfer the claims against Ascend to a Delaware federal court or to dismiss all claims and allow Plaintiff to lay venue in a Delaware court. ECF No. 58.

## DISCUSSION

I.    Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss a complaint under Rule 12, the Court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), as amended (Apr. 20, 2001). However, the Court is "not

7

bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. The Court is limited to a "narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)) (alterations in original).

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Ordinarily, defendants bear the burden of making a "clear and convincing" showing that transfer is proper. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am. Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). However, when defendants move to transfer to enforce a contractual forum selection clause, district courts should grant such a motion "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 52 (2013).

II.     Analysis

Defendants move to dismiss the complaint in its entirety against all Defendants for failure to state a claim for relief. They argue that, at a minimum, however, Plaintiff's claims against Ascend should be severed and transferred to a Delaware federal court to enforce the Agreement's forum selection clause. Before I can reach the merits of those arguments, however, I must first ascertain whether I have subject-matter jurisdiction. Although neither party has raised the issue, I have an independent obligation to ensure that federal jurisdiction exists. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Federal courts are courts of limited jurisdiction and may only hear cases and controversies that fall within their statutory grants of authority. Courts may exercise federal question jurisdiction where the cause of action arises under federal law, *see* 28 U.S.C. § 1331, or they may exercise jurisdiction based upon diversity of citizenship. *See* 28 U.S.C. § 1332. Where federal jurisdiction is based upon diversity of citizenship, diversity must be complete—that is, subject to exceptions not applicable here, each plaintiff must be a citizen of a different state from each defendant. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch.) 267, 267–68 (1806).

Limited liability companies are deemed to be citizens of all the states in which their constituents are citizens. *See Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)); *see also Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1014 (2016) ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members."). If a party to a diversity action is an LLC, the party seeking to invoke the court's diversity jurisdiction must identify both the LLC's members and their citizenship. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). "It is not enough to allege, in conclusory fashion, that none of [an] LLC's members are citizens of the same state as the [opposing party]" or that "all of the LLC's members are citizens of a certain state." *Flemming v. Port Auth. of N.Y. & N.J.*, No. 21-cv-1112, 2021 WL 878558, at *1 (E.D.N.Y. Mar. 9, 2021) (citations omitted). Further, "[i]f any of an LLC's members are themselves non-corporate entities, then a [party] must allege the identity and citizenship of their members, proceeding up the chain of ownership until the [party] has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC." *Id.* I hold that Plaintiff's allegations are insufficient to establish that I have diversity jurisdiction over this matter.

Plaintiff makes the following jurisdictional allegations.

• Plaintiff alleges that it is a Missouri limited liability company and that all its members are residents and citizens of Missouri; however, it has not identified any of its members.

• As to Defendant Ascend, Plaintiff has alleged that Ascend is a limited partnership; that its partners—Mickey Rabina and Joshua Rabina are citizens of New York; and that none of its partners are citizens of Missouri. Plaintiff does not allege whether Mickey or Joshua Rabina are limited or general partners, or whether other general partners exist.

• As to Defendant Rabina, Plaintiff alleges that Rabina Property is a limited liability company, and that its members include New York citizens Mickey and Joshua Rabina, and members or their families who also are citizens of New York. Plaintiff also alleges that none of the members of Rabina Properties are citizens of Missouri.

• Finally, as to Defendant Jardan, Plaintiff alleges that it also is a limited liability company, and that its members are the limited partnership Riva Capital Partners V and the limited liability company RP Jardan 520. Plaintiff also alleges that none of Riva Capital's partners nor any members of RP Jardan 520 are citizens of Missouri. Plaintiff does not, however, identify who the respective partners or members are.

Plaintiff has the burden to establish federal jurisdiction but has failed to do so. Its sparse allegations and pleadings in the negative are insufficient. Plaintiff's failure to state the identities of the various non-corporate entities' members makes it impossible for me to assess whether all of the parties have diverse citizenship because I do not know who the parties are.

*Steel Co. v. Citizens for a Better Env't* holds that I may not assume jurisdiction for the purposes of reaching the merits. *See* 23 U.S. 83, 94 (1998) (rejecting the "doctrine of hypothetical jurisdiction" because "it carries courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"). Thus, I must refrain from reaching the merits, and dismiss the complaint on jurisdictional grounds, without prejudice to the merits. Plaintiff shall have twenty days to replead and, if it can, repair the jurisdictional deficiencies. However, Plaintiff might consider, in deciding whether to re-plead, if it actually has a legally sufficient claim against any defendant other than Ascend, and whether it might be prudent to sue Ascend in the district where the contract between them provides suit should be brought, and not in this Court.

## CONCLUSION

For the reasons provided above, the complaint is dismissed for lack of jurisdiction, with leave to re-plead within 20 days. The argument scheduled to be held February 2, 2022 is canceled. The Clerk of Court shall terminate ECF No. 28.

SO ORDERED.

Dated:	February 1, 2022	          /s/ Alvin K. Hellerstein
	New York, New York	     ALVIN K. HELLERSTEIN
	                                           United States District Judge